UNITED STATES of America,
Plaintiff–Appellee,

v.

David Arnold DRISCOLL,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Glenn Arthur WELBORN,
Defendant–Appellant.

Nos. 79–1641, 79–1642.

United States Court of Appeals,
Ninth Circuit.

Submitted May 7, 1980.

Decided Aug. 11, 1980.

As Modified Nov. 13, 1980.

Michael J. McCabe, San Diego, Cal., Michael Stepanian, San Francisco, Cal., for defendants–appellants.

Bruce R. Castetter, Asst. U.S. Atty., argued, Michael H. Walsh, U.S. Atty., Bruce R. Castetter, Asst. U.S. Atty., on the brief, San Diego, Cal., for plaintiff–appellee.

Before FARRIS and NELSON, Circuit Judges, and JAMESON,* District Judge.

## OPINION

JAMESON, District Judge:

David Arnold Driscoll and Glenn A. Welborn were convicted in separate court trials of conspiracy to import, importation, conspiracy to possess and possession of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 846, 952, 960 and 963. In this consolidated appeal they contend that the district court (1) erred in denying their motions to suppress evidence obtained through a search of their airplane because the search was not a permissible extended border search and (2) abused its discretion in refusing to examine the plane. We affirm.

A United States Customs air officer (radar operator) was on duty at a Naval Air Station in the San Diego area, observing a radar screen, looking for aircraft crossing the border from Mexico into the United States. About 8:21 P.M. he observed an airplane about 20 miles south of the border and began tracking it. The plane went out of sight briefly, but the officer regained sight of the plane while it was still in Mexico. It crossed the border at 8:36 P.M. He continued to track the plane until it landed at Palomar Airfield at 9:00 P.M.

The officer lost radar contact with the plane twice while it was in the United States, each time for less than a minute. On both occasions there were no other planes in the area, and when contact was regained, the plane was flying in the same direction.

Appellants admitted that they flew non–stop from Mexico to Palomar Airport, but contended that the aircraft tracked on radar was another plane and not the one that landed at Palomar Airport. There was evidence that the aircraft tracked on radar was displaying a flashing red light, while other witnesses testified that appellants' aircraft had a white flashing strobe and that the red rotating beacon with which the plane was equipped was not operating. The radar officers testified, however, that no other planes were visible on the radar and that they had not relied on the color of the lights. The controllers at Palomar Airport saw no other planes in the area.

Upon landing appellants were detained until the arrival of a customs officer, who obtained the keys to the plane. Upon opening the plane door the smell of marijuana was detected, and a search revealed 36 duffle bags containing approximately 1,064 pounds of marijuana and a revolver which had been stolen in the San Francisco area.

Following indictment, appellants filed motions to suppress, contending that the search of their airplane was an impermissible extended border search. After an evidentiary hearing, the motions were denied. At separate trials on stipulated facts, appellants were convicted on the four counts.[1]

A search by customs agents may be made without probable cause or a warrant when the search occurs at the functional equivalent of the border. *Almeida–Sanchez v. United States*, 413 U.S. 266, 272, 93 S.Ct. 2535, 2539, 37 L.Ed.2d 596 (1973). The search of an aircraft arriving at an inland city airport after a nonstop flight from Mexico would clearly be the equivalent of a border search. *Id.* at 273, 93 S.Ct. at 2539; *United States v. Potter*, 552 F.2d 901, 907 (9 Cir. 1977).

---

* The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

1. Two other counts against Welborn were dismissed, and he was found not guilty on a seventh count.

■ To support a conclusion that a search occurred at the functional equivalent of a border, "the totality of the facts and circumstances within the officers' knowledge and of which they have reasonably trustworthy information [must] be sufficient in the light of their experience to warrant a *firm* belief that a border crossing has occurred." *United States v. Tilton,* 534 F.2d 1363, 1366–67 (9 Cir. 1976); *United States v. Potter, supra,* 552 F.2d at 907.[2] While "reasonable certainty" is a higher standard than probable cause, it does not require proof beyond a reasonable doubt. *Potter, Id.* And once the reasonable certainty of entry without inspection is met, it eliminates the need for probable cause to suspect the possession of goods. *United States v. Kessler,* 497 F.2d 277, 279 (9 Cir. 1974).

Appellants' plane was tracked on radar by an experienced radar operator from the time it entered the United States until it landed at Palomar airfield. Radar contact with the plane was continuously maintained except for two momentary interruptions which occurred at times when no other aircraft were in the area. The radar operator estimated the speed of appellants' plane when it crossed the border at 150 to 160 knots. An airplane following the course tracked by the operator would arrive at Palomar airfield approximately 24 minutes after crossing the border–the amount of time which actually intervened between the border crossing and appellants' arrival at Palomar.

While there is a discrepancy in the descriptions given by various witnesses who viewed the lights on the plane while it was en route, it is not clear that this testimony is irreconcilable with the conclusion that all were viewing a single plane. As pointed out by appellee, due to the design of the lights on the plane the color of light detected by an individual observer would depend not only on which lights were in operation at a given moment, but also the direction from which the plane was observed. In any event, the customs search was initiated as a result of radar tracking rather than visual observations. There was no other evidence of the presence of a second plane.[3]

■ Continuous surveillance is not a requirement of an extended border search. *United States v. Potter, supra,* 552 F.2d at 907; *United States v. Solmes,* 527 F.2d 1370, 1373 (9 Cir. 1975); *Leeks v. United States,* 356 F.2d 470, 471 (9 Cir. 1966). In this case the trial court specifically found that despite the momentary gaps in radar contact with appellants' plane, the extended border search was justified under the standard previously enunciated by this court. This finding may not be disturbed absent a showing that it is clearly erroneous. *United States v. Page,* 302 F.2d 81, 85 (9 Cir. 1962). There was ample evidence to support the finding of the district court that the search had been carried out pursuant to a "firm belief that a border crossing had occurred." [4]

2. The facts in *Potter* were similar to those in this case. A plane was tracked by radar as it crossed the border from Mexico. Although radar contact with the plane was lost for a period of 20 minutes, the court concluded that the totality of the facts and circumstances warranted "a firm belief" that the plane had crossed the border and entered the United States.

3. While the trial judge concluded that all of the witnesses were talking about the same plane, he noted also that the real issue was whether "the totality of the facts and circumstances were sufficient to warrant 'a firm belief' in the minds of the customs agents that the aircraft that entered the U.S." made its first stop inside this country at Palomar Airport (citing *Tilton, supra,* and *Potter, supra.*)

4. Although not expressly referred to by the trial judge in reaching his decision, the reasonableness of the search is also supported by the fact that when asked by the customs agent if they had anything to declare, defendant Welborn stated that he had several bags to declare. This is an implicit admission that the defendants had flown non–stop from Mexico.

The fact finder must also be convinced with reasonable certainty that "any contraband which is uncovered in the search was aboard the vehicle, vessel or aircraft when it entered the United States." *United States v. Potter,* 552 F.2d at 907. It is clear that the marijuana must have been aboard when the aircraft crossed the border.

■ Nor can we say under the facts and circumstances of this case that the district court abused its discretion in refusing to examine the plane. In carrying out the search the customs officials were relying on the radar tracking of the plane—not on visual descriptions of the safety lights. The failure of the trial judge to personally view the plane did not affect the outcome of the case. It is not necessary for the Government to prove "beyond a reasonable doubt" that the appellants' plane was in fact the plane that crossed the border—all that is required is that the officers have "articulable facts to support a reasonably certain conclusion" that the plane crossed the border. *United States v. Potter*, 552 F.2d at 907. The facts here clearly support such a conclusion.

AFFIRMED.